FRANK N. DARRAS #128904, Frank@DarrasLaw.com
SUSAN B. GRABARSKY #203004, SGrabarsky@DarrasLaw.com
PHILLIP S. BATHER #273236, PBather@DarrasLaw.com

DarrasLaw

3257 East Guasti Road, Suite 300
Ontario, California 91761-1227
Telephone: (909) 390-3770
Facsimile: (909) 974-2121

Attorneys for Plaintiff
DENISE CAMPOS

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENISE CAMPOS,<br><br>Plaintiff,<br><br>vs.<br><br>LIFE INSURANCE COMPANY OF NORTH AMERICA,<br><br>Defendant. | Case No:<br><br>COMPLAINT FOR BENEFITS UNDER AN EMPLOYEE WELFARE BENEFIT PLAN |

Plaintiff alleges as follows:

1. This Court's jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331, 1337 and 29 U.S.C. § 1132(a), (e), (f), and (g), of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1101, et seq. (hereafter "ERISA") as it involves a claim by Plaintiff for disability benefits under employee benefit plans regulated and governed under ERISA. Jurisdiction is predicated under these code sections as well as 28 U.S.C. § 1331 as this action involves a federal question.

2. The ERISA statute at 29 U.S.C. § 1133, in accordance with Regulations of the Secretary of Labor, provides a mechanism for internal appeal of benefit denials.

Those avenues of appeal have been exhausted.

3. Plaintiff is informed and believes and thereon alleges that Bechtel Global Corporation Short Term Disability Plan and Long Term Disability Plan (hereinafter collectively referred to as the "Plans") are employee welfare benefit plans established and maintained by Bechtel Global Corporation to provide its employees and those of its subsidiaries and affiliates, including Plaintiff, DENISE CAMPOS ("Plaintiff" and/or Ms. CAMPOS"), with income protection in the event of a disability and is the Plan Administrator for the Plans.

4. Plaintiff alleges upon information and belief that Defendant, LIFE INSURANCE COMPANY OF NORTH AMERICA ("LINA"), is, and at all relevant times was, a corporation duly organized and existing under and by virtue of the laws of the State of Pennsylvania, authorized to transact and transacting the business of insurance in this state, and, the insurer and Claims Administrator for the Plans.

5. Plaintiff further alleges that venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2) in that defendant LINA, who fully insured the policy and who is ultimately liable if Plaintiff is found disabled, may be found in this district. Since on or about November 1, 1956, LINA has been registered as a corporation with the state of California, has extensive contacts within the state, employs California residents, conducts ongoing business within the state and therefore, may be found within the state.

6. At all relevant times Plaintiff was a resident and citizen of the United States, an employee of Bechtel Global Corporation, its successors, affiliates and/or subsidiaries, and a participant in the Plans.

7. Based upon information and belief, Plaintiff alleges that at all relevant times herein Plaintiff was covered under group short term disability policy number LK-0006899 and long term disability policy number LK-0007551 (hereinafter collectively referred to as the "Policies") that had been issued by Defendant LINA to Bechtel Global Corporation to insure its Plans, and the eligible participants and beneficiaries of the

Plans, including Plaintiff.

8. The subject Policies promised to pay Plaintiff weekly short term disability benefits and monthly long term disability benefits for a specified period of time should she become disabled. Therefore, LINA both funds and decides whether claimants will receive benefits under the Plans and as such suffers from a structural conflict which requires additional skepticism.

9. Based upon information and belief, Plaintiff alleges that, according to the terms of the Plans, if Plaintiff became disabled, LINA promised to pay short term and long term disability benefits to Plaintiff as follows:

Short Term Disability Benefits:
- Elimination Period: For accident: 0 days; For sickness: 7 days
- Gross Disability Benefit: The lesser of 60% of an Employee's Weekly Basic Earnings rounded to the nearest dollar or the Maximum Disability Benefit.
- Maximum Disability Benefit: $1,000 per week
- Maximum Benefit Period: The 26th week from the date of disability.
- Definition of Disability/Disabled:
  - An Employee is Disabled if, solely because of Injury or Sickness, he or she is:
    i. Unable to perform the material duties of his or her regular occupation; or
    ii. Unable to earn 80% or more of his or her Covered Earnings.

Long Term Disability Benefits:
- Elimination Period: 180 days
- Gross Disability Benefit: The lesser of 60% of an Employee's monthly Covered Earnings rounded to the nearest dollar or the Maximum Disability Benefit.
- Maximum Disability Benefit: $3,500 per month

- 3 -
COMPLAINT

- Definition of Disability/Disabled:
  - The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is:
    - 1. Unable to perform the material duties of his or her Regular Occupation or a Qualified Alternative; or
    - 2. Unable to earn 80% or more of his or her Indexed Earnings.
  - After Disability Benefits have been payable for 24 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is:
    - 1. unable to perform the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience; and
    - 2. Unable to earn 80% or more of his or her Indexed Earnings.

10. Prior to her disability under the terms of the Plans, Plaintiff, who had been employed with Bechtel Global Corporation, was working as an Administrative Assistant.

11. On or about August 31, 2018, Plaintiff became disabled as defined by the terms of the Plans and timely submitted a claim to LINA for payment of disability benefits.

12. However, on or about December 7, 2018, LINA unreasonably and unlawfully denied her short term disability claim. And, on or about June 18, 2019, LINA unreasonably and unlawfully upheld its denial of her short term disability claim.

13. On or about January 30, 2020, LINA unreasonably and unlawfully denied Plaintiff's long term disability claim. And, on or about November 13, 2020, LINA unreasonably and unlawfully upheld its denial of her long term disability claim.

14. According to LINA's denial letters:
    - **December 7, 2018:** "After completing our review of your claim, we are unable to approve your claim for benefits…You have the right

to bring a legal action for benefits under the Employee Retirement Income Security Act of 1974 (ERISA) section 502 (a) following an adverse benefit determination on appeal."

- **June 18, 2019:** "After completing our review of your claim, we must uphold our prior decision to deny your claim...You have the right to bring a legal action for benefits under the Employee Retirement Income Security Act of 1974 (ERISA) section 502 (a) following an adverse benefit determination on appeal."
- **January 30, 2020:** "After completing our review of your claim, we are unable to approve your claim for benefits."
- **November 13, 2020:** "After completing our review of your client's claim, we must uphold our decision to deny her claim ..."

15. In so doing, LINA unreasonably and unlawfully failed to timely identify the medical personnel who reviewed Plaintiff's file; relied upon the opinions of physicians who were financially biased and/or not qualified to refute the findings of Plaintiff's board certified physicians; relied strictly upon physical requirements of occupations instead of taking into consideration the non-exertional requirements of Plaintiff's regular, or any, occupation; and misrepresented the terms of the Policies.

16. Additionally, LINA knew, or should have known, that the documentation submitted to and/or obtained by LINA clearly substantiated Plaintiff's disability including, but not limited to, the following:

- <u>February 16, 2018 Plaintiff's Treating Physician's Office Note:</u>
  - X-rays of her lumbar spine do reveal evidence of significant spondylosis at L4-5.
- <u>March 02, 2018 Plaintiff's MRI of the Cervical Spine:</u>
  - Central osseous ridging at the C5-C6 disc level with ventral cord abutment unchanged.

//

- ○ Central disc protrusion with ventral cord abutment at the C3-C4 disc level unchanged, and broad-based central disc protrusion at the C4-C5 disc level with ventral cord abutment unchanged.
- April 06, 2018 Plaintiff's EMG Study:
  - ○ In analyzing the median nerve conduction studies there are some abnormalities noted. The right carpal tunnel syndrome is more severe than the left carpal tunnel syndrome on today's study.
- August 24, 2018 Plaintiff's Treating Physician's Office Note:
  - ○ EMG nerve conduction study does reveal evidence of carpal tunnel syndrome bilaterally.
  - ○ X-rays of her lumbar spine do reveal evidence of significant spondylosis at L4-5.
- September 7, 2018 Plaintiff's CT of the Chest:
  - ○ Bony changes in thoracic spine.
- September 12, 2018 Plaintiff's Body Scan:
  - ○ Utilizing the lowest T-score, the findings meet criteria for osteopenia with increased risk for fracture (involving the left femoral neck and lumbar spine)
- September 14, 2018 Plaintiff's Attending Physician's Statement:
  - ○ No bending, lifting, pushing, pulling, twisting, unable to sit or stand for long periods of time.
- October 16, 2018 Plaintiff's Attending Physician's Statement:
  - ○ Denise cannot sit or stand; cannot walk without use of cane.
  - ○ Please indicate if there were any tasks or activities that you observed your patient was unable to do, related to her condition.
    - Sit or stand for a period of time. Walk unassisted.
  - ○ Would you allow your patient to return to work if her employer will accommodate the above work restrictions?

- No. Right now with patient's condition, there is no way she would be able to perform any job.
- <u>November 08, 2018 Plaintiff's MRI of the Cervical Spine:</u>
  - Progressive central disc herniation above the fusion at C3-C4 with ventral cord deformity.
  - Cord signal alteration seen here on STIR imaging, on a motion degraded study, consistent with cervical myelopathy.
  - Cerebral atrophy.
- <u>December 14, 2018 Plaintiff's MRI of the Lumbar Spine:</u>
  - Anterolisthesis, shallow disc displacement and moderate to severe facet hypertrophy at the L4-L5 level contributing to abutment of bilateral descending L5 nerves.
  - Shallow disc displacement and moderate facet hypertrophy at the L5-S1 level contributing to abutment of bilateral exiting L5 nerves.
- <u>April 23, 2019 Plaintiff's Attending Physician's Statement:</u>
  - It is more probable than not, that continuing to perform her job duties would aggravate her condition, due to having to sit, stand, twist, move her head from side to side and bend for numerous hours a day. We ask that you accept this letter as proof of her current condition, in which she would qualify for her benefits due to the listed restrictions.
- <u>July 10, 2019 Plaintiff's MRI of the Pelvis:</u>
  - Small right sacroiliac joint effusion. Degeneration of the right inferior aspect of the sacroiliac joint.
- <u>July 10, 2019 Plaintiff's MRI of the Cervical Spine:</u>
  - Spinal stenosis with disc osteophyte complex contacting the anterior margin of the cord at C4-5. C5-6 canal narrowing. C6-7 canal narrowing. C2-3 impingement of the left C3 nerve root.

/ /

- <u>October 27, 2020 Plaintiff's Functional Capacity Evaluation:</u>
  - Based on the results of today's functional capacity evaluation, it is not likely that the client will be able to return to work full time even in a sedentary capacity as she will not be able to make it through an 8 hour workday without laying down for at least 2 hours.

17. To date, even though Plaintiff has been disabled, LINA has not paid Plaintiff any disability benefits under the Policies. The unlawful nature of LINA's denial decisions is evidenced by, but not limited to, the following:

- LINA engaged in procedural violations of its statutory obligations under ERISA, including, but not limited to, failing to promptly identify the medical consultants who reviewed her file; failing to timely advise Plaintiff of what specific documentation it needed from her to perfect her claims; and
- LINA ignored the obvious, combed the record, and took selective evidence out of context as a pretext to deny Plaintiff's claims; and
- LINA ignored the opinions of Plaintiff's board certified treating physicians and/or misrepresented the opinions of Plaintiff's treating physicians. Deference should be given to the treating physicians' opinions as there are no specific, legitimate reasons for rejecting the treating physicians' opinions which are based on substantial evidence in the claim file. Further, LINA's highly conflicted physicians' opinions do not serve as substantial evidence as they are not supported by evidence in the claim file nor are they consistent with the overall evidence in the claim file.

18. Additionally, ERISA imposes higher-than-marketplace quality standards on insurers. It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim

COMPLAINT

denials," *Firestone*, 489 U.S., at 113 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B).

19. As a direct and proximate result of LINA's failure to provide Plaintiff with disability benefits, Plaintiff has been deprived of said disability benefits owed under the Plans.

32. As a further direct and proximate result of the denial of benefits, Plaintiff has incurred attorney fees and costs to pursue this action, and is entitled to have such fees and costs paid by defendants pursuant to 29 U.S.C. § 1132(g)(1), ERISA § 502(g)(1).

33. A controversy now exists between the parties as to whether Plaintiff was disabled as defined in the Plans. Plaintiff seeks the declaration of this Court that she met the Plans' definitions of disability and consequently is entitled to all benefits from the Plans to which she might be entitled while receiving disability benefits, with reimbursement of all expenses and premiums paid for such benefits from the beginning of her claim. In the alternative, Plaintiff seeks a remand for a determination of Plaintiff's claim consistent with the terms of the Plans.

WHEREFORE, Plaintiff prays for relief against Defendant as follows:

1. An award of benefits in the amount not paid Plaintiff beginning on or about September 8, 2018, together with interest at the legal rate on each monthly payment from the date it became due until the date it is paid; plus all other benefits from the Plans to which she might be entitled while receiving disability benefits, with reimbursement of all expenses and premiums paid for such benefits or, in the alternative, a remand for a determination of Plaintiff's claim consistent with the terms of the Plans;

2. An order determining Plaintiff is entitled to disability payments/benefits so long as she remains disabled as defined in the Plans;

//

3. For reasonable attorney fees and costs incurred in this action; and,

4. For such other and further relief as the Court deems just and proper.

Dated: January 28, 2021

**DarrasLaw**

*/s/ signature*

FRANK N. DARRAS
SUSAN B. GRABARSKY
PHILLIP S. BATHER
Attorneys for Plaintiff
DENISE CAMPOS